**FILED**
**November 26, 2024**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Alpha Metallurgical Resources, Inc.,**
**Employer Below, Petitioner**

**v.)**   **No. 23-383**  (JCN: 2020014383)
               (ICA No. 22-ICA-270)

**Charles E. Nelson,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Alpha Metallurgical Resources, Inc. appeals the May 1, 2023, memorandum decision of the Intermediate Court of Appeals of West Virginia ("ICA"). *See Alpha Metallurgical Res., Inc. v. Nelson*, No. 22-ICA-270, 2023 WL 3172030 (W. Va. Ct. App. May 1, 2023) (memorandum decision). Respondent Charles E. Nelson filed a timely response.[1] The issue on appeal is whether the ICA erred in affirming the October 24, 2022, decision of the West Virginia Workers' Compensation Board of Review, which affirmed the Office of Judges' June 23, 2022, order[2] granting the claimant an additional 13% for a total award of 24% permanent partial disability. Upon our review, we determine that oral argument is unnecessary and that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for vacating the ICA's decision and remanding the case to the Board of Review in a memorandum decision rather than an opinion. *See* W. Va. R. App. P. 21.

---

[1] The petitioner is represented by counsel H. Dill Battle, III, and the respondent is represented by counsel William B. Gerwig, III.

[2] The Board of Review decided the appeal of an order entered by the Office of Judges on June 23, 2022; this appeal was already pending at the Board of Review on June 30, 2022, when the West Virginia workers' compensation system underwent a significant restructuring. Despite the restructuring, the Board of Review was responsible for deciding this and "all remaining appeals filed with the Board of Review, of Office of Judges' decisions issued prior to June 30, 2022[.]" *See* W. Va. Code § 23-5-8b(e). The order entered by the Board of Review was then appealed to the ICA, which pursuant to West Virginia Code § 23-5-8b(d)(2), has exclusive jurisdiction over all final orders or decisions issued by the Board of Review after June 30, 2022. *See also* W. Va. Code § 23-5-15(a) (directing that prior statutory provisions allowing for appeals from Board of Review directly to Supreme Court of Appeals do not apply to any Board of Review decision issued after June 30, 2022).

1

In December 2019, the claimant, a coal miner, suffered multiple injuries while on the job when a shuttle car hit the shuttle car he was exiting. The compensable diagnoses include a right lumbar sprain, a cervical sprain, and a right shoulder sprain. However, the claimant continued to work until September 2020 when he underwent back surgery. The procedure involved microscopic dissection and right L4-L5 hemi-semi-laminectomy with medial facetectomy for decompression of canal right at the L5 root through its lateral recess and foraminal outlet. Post-operatively, Robert Crow Jr., M.D., diagnosed chronic low back and right lower extremity pain and right L5 radiculopathy with L4-L5 spondylosis, canal lateral recess, and foraminal stenosis. The post-operative diagnosis was consistent with Dr. Crow's advice to the claimant before the operation that Dr. Crow "[did] not expect that his chronic lumbar spine pain [to] be improved with surgery."

In April 2021, the claimant saw Prasadarao B. Mukkamala, M.D., for an independent medical evaluation. Regarding the lumbar and cervical spines, Dr. Mukkamala did not obtain valid range of motion measurements. In addition, Dr. Mukkamala found apportionment of the claimant's lumbar and cervical impairments to be appropriate. For the lumbar spine, Dr. Mukkamala attributed 5% impairment to preexisting degenerative spondyloarthropathy and 5% impairment to the compensable injury. For the cervical sprain, Dr. Mukkamala allocated 1% impairment to the compensable after apportionment, attributing 4% impairment to the preexisting degenerative spondyloarthropathy. Finally, Dr. Mukkamala gave the claimant 5% impairment for the right shoulder. Combining the 5% impairment for the lumbar sprain with the 1% impairment for the cervical sprain and the 5% impairment for the right shoulder sprain, Dr. Mukkamala provided an overall impairment rating of 11%. The claim administrator granted the claimant 11% permanent partial disability.

In June 2021, the claimant saw Bruce A. Guberman, M.D., for an independent medical evaluation. Unlike Dr. Mukkamala, Dr. Guberman stated that he obtained valid range of motion measurements for the lumbar and cervical spines. Therefore, Dr. Guberman found that the claimant had 13% impairment for the lumbar sprain and 8% impairment for the cervical sprain. Dr. Guberman also differed from Dr. Mukkamala because Dr. Guberman found that apportionment of the lumbar and cervical impairments would be inappropriate. Dr. Guberman explained that degenerative changes alone would not have caused the claimant to have impairment according to either the range of motion model or Tables C and E of West Virginia Code of State Rules § 85-20.[3] Dr. Guberman quoted page 99 of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"), in stating that "roentgenographic evidence of aging changes in the spine, called osteoarthritis, are found in 40% of people by age 35 years, and there is a poor correlation with symptoms[.]" For the right shoulder, Dr. Guberman gave the claimant 5% impairment. When Dr. Guberman combined the 13% impairment for the lumbar sprain with the 8% impairment for the cervical sprain and the 5% for the right shoulder sprain on the AMA *Guides*' combined values chart, he calculated an overall impairment rating of 24%. Dr. Guberman stated that the primary difference between his report and

---

[3] Table C of West Virginia Code of State Rules § 85-20 sets forth criteria for rating impairment for lumbar injuries, and Table E provides criteria for rating impairment for cervical disorders.

Dr. Mukkamala's report was their disagreement about whether to apportion the lumbar and cervical impairments.

In November 2021, the claimant saw Marsha Lee Bailey, M.D., for an independent medical evaluation. Regarding the lumbar and cervical spines, Dr. Bailey did not obtain valid range of motion measurements. Dr. Bailey apportioned the 10% impairment she found for the lumbar spine "by 50 percent." According to Dr. Bailey, "[t]his apportionment gives equal weight to [the claimant]'s preexisting conditions/complaints and his work injury related conditions/complaints." Dr. Bailey also attributed the entirety of the 5% impairment she found for the cervical spine to preexisting conditions. In contrast to Drs. Mukkamala and Guberman, Dr. Bailey provided 0% impairment for the right shoulder because Dr. Bailey allocated the entirety of the 3% impairment she found regarding the right shoulder to nonoccupational conditions. Contrary to the claim administrator's prior ruling that the claim included a right shoulder sprain as a compensable diagnosis, Dr. Bailey stated elsewhere in her report that the claimant's right shoulder complaints were not supported by the mechanism of injury. Therefore, Dr. Bailey provided an overall impairment rating of only 5% based on the 5% impairment for the lumbar spine that she found attributable to the compensable injury.

The Office of Judges reversed the claim administrator and granted the claimant 24% permanent partial disability based on Dr. Guberman's report. The Office of Judges found Dr. Bailey's report unreliable because it was an outlier. The Office of Judges further determined that Dr. Guberman's report was more persuasive than Dr. Mukkamala's report because it found that Dr. Mukkamala failed to provide a sufficient foundation for his apportionment decisions. The Board of Review adopted the Office of Judges' findings. In *Alpha Metallurgical Resources, Inc. v. Nelson*, No. 22-ICA-270, 2023 WL 3172030 (W. Va. Ct. App. May 1, 2023) (memorandum decision), the ICA concluded that the Office of Judges, as affirmed by the Board, was not clearly wrong in finding Dr. Guberman's report the most reliable. *Id.* at *3.

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). West Virginia Code § 23-4-9b provides that, unless there is a permanent total disability, a preexisting disease or injury "shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury." In Syllabus Point 6 of *Duff*, we held that

> [u]nder West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

250 W. Va. at 512, 905 S.E.2d at 530.

On appeal, the employer argues that Dr. Guberman' failed to apportion documented preexisting impairment and that his impairment calculation was unusually elevated. The claimant counters that he was properly awarded 24% permanent partial disability based on Dr. Guberman's report. The claimant further argues that the impairment ratings of Drs. Mukkamala and Bailey were unreliable because (1) Drs. Mukkamala and Bailey stated that they were unable to obtain valid range of motion measurements regarding the lumbar and cervical spines, and (2) Drs. Mukkamala and Bailey assigned arbitrary impairment values due to preexisting conditions. While the lower tribunals found Dr Bailey's report unreliable, their finding regarding the other two evaluations was only that Dr. Guberman's report was more persuasive than Dr. Mukkamala's report. Thus, the ICA erred in finding that the lower tribunals determined that Dr. Guberman's report was the most reliable report when there was no such determination. Furthermore, West Virginia Code § 23-4-1g(a) provides, in pertinent part, that "[u]nder no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position." We find that a remand is necessary because Dr. Guberman acknowledged that the primary difference between his report and Dr. Mukkamala's report was their disagreement about whether to apportion the lumbar and cervical impairments. Therefore, we vacate the ICA's decision and remand this case to the Board of Review for further evidentiary development, consistent with Syllabus Point 6 of *Duff*, regarding which physician (Dr. Guberman or Dr. Mukkamala) was correct in his apportionment decisions regarding the lumbar and cervical impairments.

Vacated and
Remanded with Directions

**ISSUED: November 26, 2024**

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Chief Justice Tim Armstead
Justice C. Haley Bunn

**Armstead, Chief Justice, dissenting:**

The majority determines that under the Court's holding in *Duff v. Kanawha Cnty. Comm'n,* 250 W. Va. 510, 905 S.E.2d 528 (2024), the May 1, 2023, memorandum decision of the

Intermediate Court of Appeals of West Virginia[1] must be vacated and the case must be remanded for further evidentiary development. *See* Syl. Pt. 6, *Duff* ("Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant 'has a definitely ascertainable impairment resulting from' a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s)."). While I agree that applying our ruling in *Duff* leads to this result, I dissent because I disagree with the Court's holding in *Duff*. As I explained in my separate opinion in that case:

> the majority's interpretation of West Virginia Code § 23-4-9b is not supported by the plain language of the statute or by our long-standing recognition that a workers compensation claimant has the burden of proof, [therefore] I disagree with the majority's ruling that the employer bears the burden to prove (1) that the claimant has a definitely ascertainable impairment resulting from a preexisting condition; (2) that the preexisting condition contributed to the claimant's overall impairment after the compensable injury; and (3) the precise degree of impairment that is attributable to the preexisting condition.
>
> By shifting the burden to the employer, the majority is treating apportionment as an affirmative defense. West Virginia Code § 23-4-9b does not contain any language providing that apportionment should be treated as an affirmative defense that the employer is responsible for asserting.

*Duff*, 250 W. Va. at ____, 905 S.E.2d at 542-43 (Armstead, C.J., concurring, in part, and dissenting, in part).

By applying our ruling in *Duff* to the present case, I believe that this Court continues to misapply the plain language of West Virginia Code § 23-4-9b. Therefore, I dissent.


**Bunn, Justice, dissenting:**

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.

---

[1] *See Alpha Metallurgical Res., Inc. v. Nelson*, No. 22-ICA-270, 2023 WL 3172030 (W. Va. Ct. App. May 1, 2023) (memorandum decision).